# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRAYDEN URDAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SWEEPSTEAKS LIMITED d/b/a STAKE.US,<br><br>    Defendant. | Case No.: 1:25-CV-03736 |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
# MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ......................................................................................................................... 4

    I.   Plaintiff cannot recover under the Illinois Loss Recovery Act because he fails to plausibly allege gambling, a winner, or a loser. ..................................................................................... 4

        A.  None of the Platform's games are "gambling" for the purposes of the ILRA................ 4

        B.  Sweepsteaks Limited is not a "winner" under the ILRA. .............................................. 8

        C.  Plaintiff may have spent money, but he has not "lost" anything under the ILRA.......... 9

    II.  Plaintiff has failed to plausibly allege that Sweepsteaks Limited's conduct was unfair under the ICFA.............................................................................................................................. 10

    III. Because Plaintiff's statutory claims fail, his unjust enrichment claim does too................ 12

CONCLUSION..................................................................................................................... 13

i

**INTRODUCTION**

Illinois law has long excluded certain games of chance from its definition of illegal gambling. Many of those games are familiar. Case law excludes games where a player can win additional free play. And Illinois statute excludes no-purchase-necessary sweepstakes, like those that well-known consumer brands, grocery stores, and fast-food restaurants offer to Illinois residents every day.

Sweepsteaks Limited's website, Stake.us (the "Platform"), is a new spin on these long-established models. The Platform works like this. Users purchase virtual coins called "Gold Coins" to play casino-style games including slots, roulette, and blackjack. Gold Coins have no real-world value and can only be used to play games on the Platform. When a user wins additional Gold Coins, they can only use them to continue playing games on the Platform. Sometimes, when users purchase Gold Coins, they also receive sweepstakes entries referred to as "Stake Cash" as a free, promotional bonus. Unlike Gold Coins, if a user plays a game using Stake Cash and wins, they can redeem their Stake Cash for prizes with real-world value.

While users may purchase Gold Coins, they can never purchase Stake Cash. Like a traditional sweepstakes, users may receive Stake Cash as a free, promotional bonus with their purchase of Gold Coins or through a number of other no-purchase-necessary promotional methods. In other words, to promote its product—the social casino games—Sweepsteaks Limited offers a sweepstakes in which users have the chance to win real-world prizes. Sweepsteaks Limited is not alone in doing so. Thousands of businesses across the country do the same thing every day.

Plaintiff tries to cast Sweepsteaks Limited's platform as something more nefarious. In his view, the Platform's sweepstakes are unlawful gambling in disguise. As a result, he claims that he—and putative classes of Platform users in Illinois—are entitled to recover under the Illinois

1

Loss Recovery Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, and under a theory of unjust enrichment. But the allegations don't support these claims.

As described in Plaintiff's complaint, the Platform's games fall within two well-recognized exceptions to Illinois prohibition of gambling: games that award only additional free play and no-purchase-necessary sweepstakes. There is also nothing unfair about how the Platform operates. Sweepsteaks Limited is transparent about the Platform, the games it offers, and how users can obtain, use, and win Gold Coins and Stake Cash. Plaintiff received exactly what he paid for when he purchased Gold Coins: the opportunity to play entertaining social casino-style games. And sometimes, as a free bonus, he received free sweepstakes entries in the form of Stake Cash. There is nothing unfair about that.

The Platform's social casino games offer entertaining social gameplay, and Sweepsteaks Limited promotes this product through a no-purchase-necessary sweepstakes. Neither aspect of the Platform violates Illinois gambling law. Nothing about the Platform itself or Sweepsteaks Limited's marketing of it is unfair. And there is nothing unjust about Sweepsteaks Limited keeping the money users like Plaintiff paid to play the games. The Court should therefore dismiss the complaint in its entirety.

**FACTUAL BACKGROUND**

Sweepsteaks Limited's platform, Stake.us, allows users to play entertaining social casino-style games using two distinct virtual tokens: Gold Coins and Stake Cash. *See* Compl. ¶ 34, ECF No. 1. Gold Coins are a virtual token with no real-world value. *Id.* Stake Cash is a virtual token that can be used to enter the Platform's sweepstakes and ultimately redeemed for prizes with monetary value. *Id.*

Players may obtain Gold Coins through various promotional methods including, for example, daily login bonuses. *Id.* ¶ 35; *see* Declaration of Edward Craven, Ex. A ("Terms and Conditions").[1] Alternatively, users may purchase Gold Coins. Compl. ¶ 35. Users may acquire Stake Cash for free through several promotional methods, including a daily login bonus and by sending a request to the Company by mail. *Id.* ¶ 39. Users may also receive free Stake Cash as a bonus when they purchase certain Gold Coin packages. *See id.* ¶ 40. Alternatively, users may purchase Gold Coin packages that do not offer bonus Stake Cash. *See id.* ¶ 41, Fig. 8.

Both Gold Coins and Stake Cash allow users to play a wide range of casino-style games including slots, roulette, and blackjack. Compl. ¶ 21. When a user plays with Gold Coins, they win or lose only Gold Coins. *See id.* ¶ 50. When users wish to enter the Platform's sweepstakes by using Stake Cash, they can click a button to toggle from playing with Gold Coins to playing with Stake Cash. *Id.* Playing with Stake Cash allows users to win prizes redeemable for cryptocurrency once they have played their Stake Cash three times. *See id.* ¶¶ 37, 52. When users wish to return to Gold Coin play, they can simply toggle back to playing with Gold Coins. *Id.* ¶ 52.

Like many businesses, Sweepsteaks Limited promotes the Platform through social media campaigns on Instagram, TikTok, and X. *See* Compl. ¶ 60. Influencers, celebrities, and athletes have also promoted the Platform on social media and streaming platforms. *Id.* ¶ 62–63, 67.

Plaintiff began playing games on the Platform in August 2022. Compl. ¶ 71–73. Since then, he has spent about $15,000 on the Platform. *Id.* ¶ 74. Casting these purchases as gambling losses, Plaintiff alleges that he is entitled to recover the money he spent under the Illinois Loss Recovery

---

[1] The Court may rely on the complete Terms and Conditions without converting this motion into a motion for summary judgment under Federal Rule of Civil Procedure 12(d) because Plaintiff refers to the Terms and Conditions throughout his complaint, *see e.g.*, Compl. ¶¶ 37, 45–47, 109, there can be no dispute that they are authentic, *see* Craven Decl., and the Terms and Conditions are central to Plaintiff's claims because they govern how users like Plaintiff may play the Platform's games, *see Brownmark Films LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

3

Act. *Id.* ¶¶ 83–98. He also alleges that Sweepsteaks Limited violated the Illinois Consumer Fraud and Deceptive Business Practices Act by engaging in unfair conduct in its marketing and operation of the Platform. *Id.* ¶¶ 99–116. He finally seeks to recover for the same alleged conduct under a theory of unjust enrichment. *Id.* ¶¶117–21.

## ARGUMENT

The Court must dismiss all three of Plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a court must accept as true all factual allegations contained in the complaint, it need not presume the truth of legal conclusions or conclusory allegations that merely recite the elements of the claim. *McCauley*, 671 F.3d at 616.

**I.     Plaintiff cannot recover under the Illinois Loss Recovery Act because he fails to plausibly allege gambling, a winner, or a loser.**

The Illinois Loss Recovery Act ("ILRA") allows any person who, "by gambling," loses at least $50 to sue the winner and recover their loss. 720 ILCS 5/28-8(a). To state a claim under the ILRA, the plaintiff must therefore allege that there was (1) gambling, (2), a winner, and (3) a loser. *See id.*; *Dew-Becker v. Wu*, 178 N.E.3d 1034, 1039 (Ill. 2020). Plaintiff's allegations lack all three.

**A.  None of the Platform's games are "gambling" for the purposes of the ILRA.**

Without gambling, there can be no claim under the ILRA. Under Illinois law, gambling means "play[ing] a game of chance or skill for money or other thing of value." *Dew-Becker*, 178

4

N.E.3d at 1039 (quoting 720 ILCS 5/28-1(a)(1)). But not all games of chance are "gambling" for the purposes of the ILRA. Illinois statute excludes games of chance where "money or other things of value can be won but no payment or purchase is required to participate." 720 ILCS 5/28-1(b)(13); *see also People v. Eagle Food Centers, Inc.*, 31 Ill.2d 535, 540–51 (1964) (sweepstakes not an unlawful lottery). And case law excludes games that provide the "possibility of winning a greater or lesser amount of amusement." *Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871, 882 (N.D. Ill. 2016) (citing *People v. One Mech. Device*, 11 Ill. 2d 151, 155, 142 N.E.2d 98, 100 (1957)).

As Plaintiff describes them, none of the Platform's games are gambling under the ILRA. If a user wins a game playing Gold Coins, they receive additional Gold Coins. These Gold Coins can only be used for additional play—users can never redeem them for anything with real-world value. *See* Compl. ¶¶ 3, 36; Terms and Conditions §§ 3(f), 7.2(a). In other words, the games offer nothing more than the "possibility of winning a greater or lesser amount of amusement." *Soto*, 159 F. Supp. 3d at 882. They are therefore not gambling under Illinois law.

While users who play with Stake Cash may—and do—win additional Stake Cash redeemable for prizes with real-world value, that does not make the Stake Cash games gambling. As Plaintiff acknowledges, users are never required to pay or purchase anything to play Stake Cash Games. *See* Compl. ¶ 39; *see also* Terms and Conditions § 8. Illinois statute therefore expressly excludes them from the definition of gambling. *See* 720 ILCS 5/28-1(b)(13). This exclusion is consistent with longstanding Illinois case law recognizing that no-purchase-necessary sweepstakes like the Platform's are not unlawful "lotteries" because they lack the element of consideration. *See Eagle Food Centers*, 31 Ill.2d at 540–51.

Plaintiff's suggestion that the Platform is a "gambling device," Compl. ¶ 89, also misses the mark. Under Illinois law, a gambling device is:

5

> any clock, tape machine, slot machine, or other machines or device for the reception of money or other thing of value on chance or skill or upon the action of which money or other thing of value is staked, hazarded, bet, won, or lost; or any mechanism, furniture, fixture, equipment, or other device designed primarily for use in a gambling place.

720 ILCS 5/28-2(a). While one district court has held that this definition can encompass a website, *see Phillips v. Double Down Interactive, LLC*, 173 F. Supp. 3d 731, 737–39 (N.D. Ill. 2016), the text is clear that the statute refers only to physical devices. Only physical devices allow for the "reception" of money or something of value. And only a physical device can be a mechanism, furniture, fixture, or equipment for use in a gambling place, which must consist of "any real estate, vehicle, boat, or any other property." 720 ILCS 5/28-3. More than a century of Illinois case law confirms this understanding. *See e.g.*, *Playboy Hotel of Chicago, Inc. v. City of Chicago*, 147 Ill. App. 3d 984, 988 (1st Dist. 1986) (blackjack table); *People v. McDonald*, 26 Ill. 2d 325, 326–27 (1962) (punch boards, policy tickets, and poker-game devices); *People v. One Slot Mach. Owned by Telequiz Corp.*, 344 Ill. App. 379, 380 (2d Dist. 1951) (quiz bank machine); *Almy Mfg. Co. v. City of Chicago*, 202 Ill. App. 240, 242 (1st Dist. 1916) (slot machine). Courts interpreting similar language in other state gambling statutes have also recognized that limiting terms like machine and device to physical equipment is the "most natural reading." *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 462–63 (D. Md. 2015) (concluding that "machine, apparatus, or device" in California gambling did not encompass "software in and of itself"). Linguistic authorities also support this reading. *Id.*; *see e.g.*, Device, Black's Law Dictionary (12th ed. 2024) ("A device may be an apparatus or an article of manufacture."); Device, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/device ("a piece of equipment or a mechanism designed to serve a special purpose or perform a special function").

Moreover, the separate, specific provision prohibiting websites that offer games of chance, 720 ILCS 5/28-1(a)(12), controls over the broader prohibition of "gambling devices." *See Stone v.*

6

*Dep't of Empl. Sec. Bd. of Rev.*, 151 Ill. 2d 257, 266 (1992) (noting that specific statutory provisions generally control over general provisions on the same subject). However, while this provision does apply to websites, it does not apply to the Platform. Under section 5/28-1(a)(12), gambling includes knowingly establishing, maintaining, or operating "an Internet site that permits a person to play a game of chance or skill for money or other thing of value by means of the Internet." 720 ILCS 5/28-1(a)(12). But, as discussed above, section 5/28-1(b) expressly carves out participation in games of chance, like the Stake Cash games, "where money or other things of value can be won but no payment or purchase is required to participate." 720 ILCS 5/28-1(b)(13). That excludes the Platform from section 5/28-1(a)(12)'s—and therefore the ILRA's—reach. *See Moushon v. AAA Amusement, Inc.*, 267 Ill. App. 3d 187, 192 (4th Dist. 1994) (ILRA provides for cause of action for loser at gambling prohibited by section 28-1 but not for loser at games excluded under section 28-1(b)).

      Cases analyzing Illinois gambling statutes confirm this understanding. In *Cie v. Comdata Network, Inc.*, for example, the plaintiff argued that credit card cash advances, which he used for legal pari-mutuel betting, were void gambling contracts under 720 ILCS 5/28-7(a). 275 Ill. App. 3d 759, 760–61 (1st Dist. 1995). The plaintiff pointed to a "key difference" between section 28-1(a)(1), which applies to playing a game, and section 28-1(a)(2), which applies to pari-mutuel betting: the phrase "unless excepted in subsection (b)" appears only in section 28-1(a)(1). *Id.* at 764. The court rejected this distinction, agreeing with the defendants that "it is clear that the types of gambling listed in subsection 28-1(b) are expressly excepted from the definition of gambling." *Id.* Section 28-1(b)(13) therefore excludes the Platform from the definition of gambling for the purposes of the ILRA.

As Plaintiff alleges, the Platform offers two types of games. In one, players can win nothing more than additional amusement. In the other, players may win money or other things of value, but no payment or purchase is required to participate. Illinois law excludes both types of game from the definition of gambling. Plaintiff therefore cannot state a claim under the ILRA.

### B. Sweepsteaks Limited is not a "winner" under the ILRA.

Even if the Platform's games were gambling, Plaintiff's claims would still fail because Sweepsteaks Limited is not a "winner" from whom Plaintiff can recover under the ILRA.

Starting with the Gold Coins, courts in this District have recognized that a website operator is not a "winner" when it sells virtual currency for use in games of chance where the only prize is additional play. *Phillips*, 173 F. Supp. 3d at 739–40; *Ristic v. Mach. Zone, Inc.*, No. 15-cv-8996, 2016 WL 4987943, at *3 (N.D. Ill. Sept. 19, 2016). That is because the operator "keeps the money a player pays to buy additional [coins] no matter whether that player wins or loses in the games." *Phillips*, 173 F. Supp. 3d at 740. In other words, "that money is never put at risk." *Id.* While Sweepsteaks Limited may sell fewer Gold Coins to a winning player, the chance of reduced future sales is not the same thing as Sweepsteaks Limited putting its own money at risk. *See id.* Because Sweepsteaks Limited keeps the money a player pays to purchase Gold Coins regardless of whether the user wins or loses, it cannot be a winner under the ILRA.

While the Stake Cash analysis differs in some ways, the result is the same: Sweepsteaks Limited is never the winner. As Plaintiff acknowledges, users of the Platform receive free Stake Cash through various promotional methods. *See* Compl. ¶ 39. Users may also win prizes with real-world value. *Id.* ¶ 34. However, "no amount of *earned* money ever hangs in the balance or depends on the outcome of the game," *Phillips*, 173 F. Supp. 3d at 740 (emphasis added), because Sweepsteaks Limited does not earn money when it gives away Stake Cash for free. Therefore, even when a player loses Stake Cash, the Company is not a winner under the ILRA.

8

### C. Plaintiff may have spent money, but he has not "lost" anything under the ILRA.

Finally, Plaintiff cannot plausibly allege that he "lost" money within the meaning of the ILRA. At best, he alleges that he spent money on the Platform.

Plaintiff's allegations treat purchases as equivalent to losses. But when Plaintiff purchased Gold Coins, he was "in essence buying the right to continue playing the games." *Philipps*, 173 F. Supp. 3d at 741. He does not plausibly allege that he received anything less. He therefore did not lose anything when he purchased Gold Coins. *See id.*; *see also Humphrey v. Viacom, Inc.*, No. 06-2768, 2007 WL 1797648, at *10 (D.N.J. June 20, 2007) (dismissing loss recovery claim in part because fantasy sports participants did not lose anything in paying for the right to participate).

Nor can Plaintiff allege that he lost anything by playing with Stake Cash because he could not and did not pay for Stake Cash. At most, he purchased Gold Coins and received free, promotional sweepstakes entries, in the form of Stake Cash, as a bonus. Characterizing Plaintiff's purchase of Gold Coins as "a loss" would lead to far-reaching and absurd results. *See Dawkins v. Fitness Int'l, LLC*, 210 N.E.3d 1184, 1190 (Ill. 2022) (courts should reject reading of statute that leads to absurd results). If Plaintiff has alleged a loss here, every disappointed sweepstakes participant could sue to recover money spent on the sweepstake sponsor's product, as long as they spent over $50. This result would threaten the well-established no-purchase-necessary sweepstakes that Illinois law expressly excludes from the definition of gambling. *See* 720 ILCS 5/28-1(b)(13); *Eagle Food Centers*, 31 Ill. 2d at 540–41. The Court should decline to read the ILRA this way. *See Dawkins*, 210 N.E.3d at 1190.

Because there is neither a winner nor a loser, Plaintiff's allegations that the Platform offers casino-style games is irrelevant. Courts have repeatedly rejected loss recovery claims where, as here, there is no winner or loser even where the games replicate casino-style games. *See e.g.*,

9

*Sonnenberg*, 810 F.3d at 510–11 (rejecting claim against online poker website); *Phillips*, 173 F. Supp. 3d at 736, 739–41 (rejecting claim against social casino website offering simulated slots, roulette, poker, and blackjack). Plaintiff's efforts to tie the Platform to real-money gaming cannot overcome his failure to plausibly allege that Sweepsteaks Limited won and that he lost.

To state a claim under the ILRA, Plaintiff must plausibly allege that there was gambling, a winner, and a loser. He has not done so. The Court should therefore dismiss Plaintiff's ILRA claim.

## II.     Plaintiff has failed to plausibly allege that Sweepsteaks Limited's conduct was unfair under the ICFA.

Next, Plaintiff alleges that Sweepsteaks Limited engaged in unfair conduct under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1–505/12. The Court should dismiss this claim because Plaintiff has failed to plausibly allege that Sweepsteaks Limited's conduct was "unfair" as required to state a claim under the ICFA.

To state a claim under the ICFA, Plaintiff must allege unfair or deceptive conduct. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). To determine whether conduct is unfair, courts consider whether it (1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, or (3) causes substantial injury to consumers. *Batson v. Live Nation Entertainment, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014). While a practice need not satisfy all three criteria to be "unfair," it must satisfy at least one. *See id.* As alleged, Sweepsteaks Limited's conduct satisfies none.

First, Plaintiff has failed to plausibly allege that Sweepsteaks Limited's conduct offends public policy. A practice offends public policy if it is contrary to what is "found in [Illinois'] constitution, its statutes, and its judicial decisions." *Batson*, 746 F.3d at 833. While Illinois law does prohibit unauthorized gambling, as explained above, none of the games on Sweepsteaks Limited's Platform involve unauthorized gambling. *See* 720 ILCS 5/28-1(b)(13); *Phillips*, 173 F.

10

Supp. 3d at 742–43. Because the Platform does not involve gambling at all, it cannot violate Illinois public policy against unauthorized gambling.

Second, Plaintiff has failed to plausibly allege that Sweepsteaks Limited's conduct is immoral, unethical, oppressive, or unscrupulous. Plaintiff asserts that Sweepsteaks Limited's conduct is immoral for two reasons. First, Plaintiff alleges that Sweepsteaks Limited encourages "illegal gambling while marketing its platform as a legal simulation of casino-style games." Compl. ¶ 114. Second, he claims that the Platform "exploit[s] psychological triggers associated with gambling and addiction in order to target susceptible populations." *Id.* These allegations fall far short of what is required. To satisfy this criterion, a plaintiff must allege that the defendant's conduct is "so oppressive as to leave the consumer with little alternative except to submit to it." *Batson*, 746 F. 3d at 833. It is not satisfied if a consumer "can avoid the defendant's practice by seeking an alternative elsewhere." *Id.* (citing *Siegel*, 612 F.3d at 936). Plaintiff has not and cannot plausibly allege that Sweepsteaks Limited left him no choice but to spend money to play games on the Platform. Players like Plaintiff have numerous alternatives: he could have avoided the cost of buying Gold Coins by waiting to receive a free allotment of virtual coins, Terms and Conditions §§ 7–8, or opting for alternative forms of entertainment after he used all of his Gold Coins or Stake Cash, *see Phillips*, 173 F. Supp 3d at 743. Plaintiff therefore cannot plausibly allege that Sweepsteaks Limited's conduct satisfies this criterion.

Third, and finally, Plaintiff has failed to show that the alleged conduct caused substantial injury. A practice causes substantial injury if the injury is "(1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided." *Batson*, 746 F.3d at 834. As

11

explained above, because Plaintiff has failed to allege that he could not reasonably avoid spending money on the Platform, this last requirement dooms his claim of substantial injury.

Because Plaintiff has not plausibly alleged that Sweepsteaks Limited engaged in unfair conduct, the Court should dismiss his ICFA claim.

### III. Because Plaintiff's statutory claims fail, his unjust enrichment claim does too.

Plaintiff also seeks to recover under a theory of unjust enrichment. This claim rests on the same conduct as alleged in his ILRA and ICFA claims. Because those claims fail, his unjust enrichment claim does too.

To state a claim based on a theory of unjust enrichment, a plaintiff must allege that "the defendant has unjustly retained a benefit to the plaintiff's detriment," and that "defendant's retention of that benefit violates the fundamental principles of justice, equity, and good conscience." *Siegel*, 612 F.3d at 937 (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 545 N.E.2d 672, 679 (1989)). Unjust enrichment is "not a separate cause of action that, standing alone, will justify an action for recovery." *Siegel*, 612 F.3d at 937 (quoting *Martis v. Grinnell Mut. Reins. Co.*, 388 Ill. App. 3d 1017 (2009)). When an unjust enrichment claim rests on the same conduct alleged in another claim, the unjust enrichment claim is tied to that claim and must stand or fall with it. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see also Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 743–44 (N.D. Ill. 2016) (applying this principle to unjust enrichment claim against operator of online social casino).

The only basis for Plaintiff's unjust enrichment claim is that Sweepsteaks Limited unfairly profited from the Platform, which Plaintiff alleges offers unlawful games of chance. Because this claim rests on the same improper conduct Plaintiff alleges in his ILRA and ICFA claims, his unjust enrichment claim must fall with those claims. *Cleary*, 656 F.3d at 517; *Phillips*, 173 F. Supp. 3d

at 743–44. As shown above, none of the conduct Plaintiff has alleged is unlawful. *Soto*, 159 F. Supp. 3d at 884. And Plaintiff received exactly what he paid for: virtual coins that permitted him to play entertaining social casino-style games. *See id.* There is therefore nothing inequitable about the Company retaining the money Plaintiff spent. *See id.* The Court should therefore dismiss Plaintiff's unjust enrichment claim.

## CONCLUSION

Plaintiff's attempt to allege that Sweepsteaks Limited operates an illegal gambling platform fails. As the Complaint itself makes clear, Sweepsteaks Limited does not offer gambling. Users purchase virtual coins to play entertaining casino-style games in which they can win nothing but additional gameplay. Sometimes, as a free bonus, users receive free sweepstakes entries that give them the chance to win prizes with real-world value. But no user has ever been required to—or even could—pay for those entries. The Platform's games are therefore not gambling. Nor did Sweepsteaks Limited engage in unfair conduct in marketing and operating the Platform. Users are free to take advantage of the numerous free methods to obtain both Gold Coins and Stake Cash. As Plaintiff acknowledges, users are never required to pay to play. For the same reason, the Company has not unjustly retained any benefit at Plaintiff's expense. He received exactly what he expected when he purchased virtual coins from the Company: the opportunity to play entertaining casino-style games. For all of these reasons, the Court should dismiss the complaint in its entirety for failure to state a claim.

DATED: July 8, 2025                             Respectfully submitted,

*/s/A. Jeff Ifrah*
A. Jeff Ifrah
jeff@ifrahlaw.com
Robert W. Ward
rward@ifrahlaw.com
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, D.C. 20006
Tel: (202) 524-4140
Fax: (202) 524-4141

*Counsel for Defendant*