**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| BRAYDEN URDAN, individually and on behalf of all other similarly situated,<br><br>   *Plaintiff*,<br><br>  v.<br><br>SWEEPSTEAKS LIMITED d/b/a STAKE.US,<br><br>   *Defendant*. | Case No.: 1:25-CV-03736<br><br>Hon. Jorge L. Alonso |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT'S
RENEWED MOTION TO COMPEL ARBITRATION**

Case: 1:25-cv-03736 Document #: 74 Filed: 06/05/26 Page 2 of 20 PageID #:1078

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ...........................................................................................................1

    I.   The Company's evidence more than clears Rule 901's low bar for authentication and is otherwise admissible..................................................................1

        A.  The Company properly authenticated the images and screen recordings. .........2

        B.  Plaintiff offers no evidence of his own that undermines the reliability of the Company's evidence ...................................................................6

        C.  The images and screen recordings are not hearsay and would be admissible even if they were..................................................................7

    II.  Plaintiff agreed to arbitrate both when he registered and when he accepted a new version of the Terms..................................................................9

    III.  The Court may not resolve Plaintiff's enforceability challenges, but to the extent it does, it should reject them........................................................11

        A.  Neither the arbitration agreement nor the delegation clause are procedurally unconscionable..................................................................11

        B.  Neither the arbitration agreement nor the delegation clause are substantively unconscionable..................................................................13

        C.  The Court can and should sever any unconscionable provision ......................15

CONCLUSION.........................................................................................................15

i

**TABLE OF AUTHORITIES**

**Cases**

*Agha v. Uber Techs., Inc.*,
730 F. Supp. 3d 756 (N.D. Ill. 2024) ................................................................ 14

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
No. 17-CV-04570, 2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) ............................. 2, 9

*Davis v. Fenton*,
26 F. Supp. 3d 727 (N.D. Ill. 2014) ................................................................ 12

*Dean v. Wexford Health Sources, Inc.*,
18 F.4th 214 (7th Cir. 2021) ................................................................ 8

*Domer v. Menard, Inc.*,
116 F. 4th 686 (7th Cir. 2024) ................................................................ 3

*Hamera v. Best Buy Co.*,
790 F. Supp. 3d 664 (N.D. Ill. 2024) ................................................................*passim*

*Hubbert v. Dell Corp.*,
359 Ill. App. 3d 976 (5th Dist. 2005) ................................................................ 10

*Hwang v. Pathway LaGrange Prop. Owner, LLC*,
2024 IL App (1st) 240534 ................................................................ 15

*Johnson v. Uber Techs., Inc.*,
No. 16 C 5468, 2017 WL 1155384 (N.D. Ill. Mar. 13, 2017) ................................................................ 4

*Keefe v. Allied Home Mortg. Corp.*,
393 Ill. App. 3d 226 (5th Dist. 2009) ................................................................ 11

*Kinkel v. Cingular Wireless LLC*,
223 Ill. 2d 1 (2006) ................................................................ 13, 15

*M&G Health Associates, Inc. v. Health Care Service Corp.*,
No. 08 CV 3944, 2009 WL 10740611, at *2 (N.D. Ill. Feb. 24, 2009) ................................................................ 8

*MacClelland v. Cellco P'ship*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022) ................................................................ 13, 14

*Mason v. Midland Funding LLC*,
815 F. App'x 320 (11th Cir. 2020) ................................................................ 5

*Matricciani v. Am. Homeowner Pres., Inc.*,
718 F. Supp. 3d 825 (N.D. Ill. 2024) ................................................................ 11

*Melena v. Anheuser-Busch, Inc.*,
219 Ill. 2d 135 (2006) ................................................................ 9

*Monper v. Boeing Co.*,
No. C13-1569, 2016 WL 1703839, at *4 (W.D. Wash. Apr. 28, 2016) ................................................................ 8

*Pandolfi v. AviaGames, Inc.*,
No. 23-CV-05971, 2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ................................................................ 13

*Parker v. Verizon Commc'ns Inc.*,
No. 24-cv-08436, 2025 WL 1547291 (N.D. Ill. May 30, 2025)...................................13

*Phoenix Ins. Co. v. Rosen*,
949 N.E.2d 639 (Ill. 2011) ......................................................................................11

*Powell v. Payday Loan Store of Illinois, Inc*.,
No. 09 C 4146, 2010 WL 3893894 (N.D. Ill. Sept. 28, 2010)....................................13

*Sanchez v. CleanNet USA, Inc.*,
78 F. Supp. 3d 747 (N.D. Ill. 2015) .........................................................................15

*Scanlon v. DraftKings, Inc.*,
No. 2484CV01099 (Mass. Super. Ct. Feb. 17, 2026) ............................................4, 6, 7

*Selden v. Airbnb, Inc.*,
No. 16-cv-933, 2016 WL 6476934 (D.D.C. Nov. 1, 2016)........................................2

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016).................................................................................10

*Shockley v. PrimeLending*,
929 F.3d 1012 (8th Cir. 2019)...................................................................................9

*Specht v. Google Inc.*,
747 F.3d 929 (7th Cir. 2014).................................................................................4, 6

*Thakkar v. ProctorU Inc.*,
571 F.Supp.3d 927 (C.D. Ill. 2021).........................................................................11

*Thanongsinh v. Bd. of Educ.*,
462 F.3d 762 (7th Cir. 2006).....................................................................................2

*Valentine v. Wideopen W. Fin., LLC*,
No. 09 C 07653, 2012 WL 1021809 (N.D. Ill. Mar. 26, 2012)..............................12, 14

*Warner v. Real ID, Inc.*,
819 F. Supp. 3d 931 (N.D. Ill. 2026) .......................................................................10

*Wilson v. Redbox Automated Retail, LLC*,
448 F. Supp. 3d 873 (N.D. Ill. 2020) .......................................................................10

*Zheng v. Live Auctioneers LLC*,
No. 20-cv-9744, 2021 WL 2043562 (S.D.N.Y. May 21, 2021)...............................8, 12

*Zuniga v. Major League Baseball*,
2021 IL App (1st) 201264........................................................................................11

**Rules**

Fed. R. Evid.

801.............................................................................................................................8

803..........................................................................................................................8, 9

901.............................................................................................................................2

## PRELIMINARY STATEMENT

Plaintiff's opposition makes one thing clear: he cannot dispute that he agreed to arbitrate when he created his account and when he later accepted a new version of the Terms. Despite having had access to the code underlying the registration screen and mandatory acceptance window ("MAW") since December, Plaintiff offers no reason to believe—let alone any evidence—that those screens appeared differently than the recreations accompanying the Company's renewed motion. In situations like this, courts frequently rely on similar recreations in granting motions to compel arbitration. This Court should do the same.

Plaintiff's notice, assent, and enforceability challenges fare no better than his evidentiary objections. The simple, uncluttered registration screen and the MAW more than satisfy Illinois law's requirements for online contract formation. As to the MAW, Plaintiff essentially concedes the point—rehashing his evidentiary challenges but not meaningfully challenging notice and assent. As for enforceability, Plaintiff fails to identify any provision of the to the arbitration agreement or delegation clause that is both unconscionable and non-severable.

Because the parties agreed to arbitrate all disputes, including validity, enforceability, and arbitrability challenges, the Court should grant the Company's renewed motion to compel arbitration.

## ARGUMENT

I. **The Company's evidence more than clears Rule 901's low bar for authentication and is otherwise admissible.**

Rather than asserting that he did not complete the registration and acceptance processes depicted in the submitted images and screen recording, Plaintiff asserts that the Company's evidence is unauthenticated and inadmissible. His evidentiary challenges fall into three broad categories: challenges to the level of detail in the images submitted, the veracity of Mr. Galavalli's

1

testimony and the admissibility of the images and screen recordings. In raising these challenges, he asks the Court to transform Rule 901's relatively low bar for authentication into something substantially more demanding. The Court should reject this request.

### A. The Company properly authenticated the images and screen recordings.

Authentication under Rule 901 is a simple procedure. The proponent must only prove the document is what the proponent claims it to be. *See* Fed. R. Evid. 901(a). This is not a "particularly high hurdle." *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 779 (7th Cir. 2006). A party can authenticate evidence by, among other things "testimony of a witness with knowledge" "that a matter is what it is claimed to be." *Hamera v. Best Buy Co.*, 790 F. Supp. 3d 664, 669 (N.D. Ill. 2024). As applied to images depicting webpages, a party need only provide a witness with personal knowledge who represents that the image reflects the relevant process as it would have appeared to the user at the relevant time. *See id.* The Company has done just that. The Company's witness, engineering manager Sarath Galavalli, explains precisely how the images were generated, and how he knows that they reflect the user interface and functionality as they would have appeared to Plaintiff on the relevant dates. (Galavalli Decl. ¶¶ 22–39, Dkt. No. 57-6.) Courts routinely rely on images obtained from archived code and testing environments. *See e.g.*, *Hamera*, 790 F. Supp. 3d at 669–70 (system of record); *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *7 (S.D.N.Y. Nov. 20, 2017) (quality assurance server), *R&R adopted as modified*, 2018 WL 671258, at *1–2 (S.D.N.Y. Jan. 31, 2018); *Selden v. Airbnb, Inc.*, 2016 WL 6476934, at *9 (D.D.C. Nov. 1, 2016) (archived code), *aff'd*, F. 4th 148 (D.C. Cir. 2021).[1] This Court should do the same.

Plaintiff suggests that the image is deficient because it provides only the "visual layout" of the registration screen, and not, among other things, "what content the Terms hyperlink would

---

[1] *See* Declaration of Kyle Miller, *Selden v. Airbnb, Inc.*, No. 16-cv-933, Dkt. No. 13-2 (stating that declarant rendered wireframe based on archived code).

have loaded." (Opp. at 6–7.) This challenge misstates what is required under the *Domer* test and ignores that the Company has explained exactly the content the Plaintiff would have seen had he clicked the hyperlink—the version of the Terms in effect when Plaintiff created his account.

Starting with the *Domer* test, as the Seventh Circuit has explained, visual layout is at the core of the Court's "fact-intensive legal inquiry." *Domer v. Menard, Inc.*, 116 F. 4th 686, 695 (7th Cir. 2024). The names alone of four of the *Domer* factors—simplicity, clarity, design of hyperlinks and disclosure, and spatial placement—make this clear. *See id.* at 698–99. And even the fifth factor, temporal relationship, is often satisfied based on a webpage's visual characteristics. *See e.g.*, *id.* at 699 (concluding that disclosure was temporally connected to user's required act because it appeared on the same page as the relevant action button).

As for Plaintiff's assertion that the Company has not explained how the Platform actually operated, (Opp. at 6), that is simply incorrect. Mr. Galavalli's declaration states that when Plaintiff registered, he was required to provide certain information and create a username and password. (Galavalli Decl. ¶¶ 23–24.) Mr. Galavalli further explains that the Company's records confirm Plaintiff would have registered using the screen depicted in Exhibit A. (*Id.* ¶¶ 24–29, Ex. F.). And finally, Mr. Galavalli confirms that "clicking the hyperlink would have opened a new browser window or tab displaying the Terms in their entirety," and provides a copy of the Terms that would have appeared. (*Id.* ¶¶ 29–30, Ex. A.)

Nothing more is required. Each of the cases on which Plaintiff relies makes this clear. In *Specht v. Google Inc.*, for example, the Seventh Circuit concluded that the district court properly excluded certain screenshots where plaintiff offered only "assert[ions] from memory that the screenshots reflected how those sites appeared," not authentication by "someone with personal knowledge of reliability of the archive service from which the screenshots were retrieved." 747

3

F.3d 929, 933–34 (7th Cir. 2014). Mr. Galavalli has not relied on his memory. He explains (a) the source of the code on which he relied, (b) how he knows that the code reflects the code as it existed at the relevant time, (c) that he was able to recreate the registration screen using that code, and (d) that the recreation reflects the interface and user experience the platform would have presented to Plaintiff. *See Hamera*, 790 F. Supp. 3d at 669–70 (recreation authenticated where declarant had personal knowledge of relevant webpage and represented that mock-up reflected what plaintiff would have seen on relevant date). This level of personal knowledge is a far cry from the mere "assert[ions] from memory" in *Specht*. 747 F.3d at 933–34.

Plaintiff's reliance on *Johnson v. Uber Techs., Inc.* fails for similar reasons. In *Johnson*, the court concluded that Uber had not carried its burden where a senior software engineer "describe[d] on a step-by-step basis, what a person sees on his or her phone screen using Uber's current version of its application." *Johnson v. Uber Techs., Inc.*, 2017 WL 1155384, at *2 (N.D. Ill. Mar. 13, 2017). The court identified two related failings in Uber's submission: the software engineer neither (1) described the process as it existed on the date the plaintiff created his account nor (2) represented that the current process was the same as it was on the relevant date. *Id.* Unlike Uber, the Company here has described the registration process and the MAW's functionality as they existed on the relevant dates. *Compare Hamera*, 790 F. Supp. 3d at 669–70 (evidence sufficient where declarant represented that screenshot reflected what plaintiff would have seen on relevant date), *with Johnson*, 2017 WL 1155384, at *2 (evidence insufficient where declarant did not describe process as it existed on relevant date) *and Scanlon v. DraftKings, Inc.*, No. 2484CV01099 (Mass. Super. Ct. Feb. 17, 2026), slip op. at 13–14 (evidence insufficient where defendant did not authenticate recreation process and did not indicate that relevant employees had personal knowledge of appearance of processes during relevant period).

4

The Eleventh Circuit's decision in *Mason v. Midland Funding LLC*, 815 F. App'x 320 (11th Cir. 2020) is even further afield. In *Mason*, the court rejected the defendant's evidence for two reasons, neither of which apply here. First, the defendant failed to present evidence of "what terms [the plaintiff] actually saw . . . when he viewed the website." *Mason*, 815 F. App'x at 325. Second, the defendant's evidence failed to provide any information about the contents of the hyperlinked terms and conditions page. *Id.* Here, the Company has established both that the Terms were made available by hyperlink and that, had Plaintiff clicked that link, the platform would have displayed the then-current version of the Terms in a new window or tab. The Company has also established which version of the Terms would have been displayed in the May 2023 MAW. Accordingly, unlike the defendant in *Mason*, the Company has established both the registration process and the relevant version of the Terms. *Cf.* 815 F. App'x at 325. To the extent *Mason* is relevant at all, it fails to undermine the Company's evidence of contract formation.

Next, Plaintiff argues that the images and screen recording cannot accurately depict what Plaintiff would have seen because it depicts a different website, Stake.com. (Opp. at 9–11.) Plaintiff does not, however, provide any evidence that contradicts Mr. Galavalli's statement that the image reflects the "exact user interface and user experience" that Stake.us "would have presented to Plaintiff when he completed the user-registration process." (Galavalli Decl. ¶ 27.) *See Hamera*, 790 F. Supp. 3d at 669–70 (rejecting evidentiary challenge to recreation where plaintiff failed to present evidence showing that the webpage appeared differently than depicted). Nor does he present any evidence to suggest that the platform did not display a window that functioned exactly like the MAW depicted in the images and screen recording, one that required him to scroll through the Terms in their entirety and check a box to accept the new version of the Terms. *See id*. What's more, Plaintiff himself alleges that Stake.us and Stake.com are "virtually identical" with

5

"virtually indistinguishable" user interfaces. (*Compare* Compl. ¶¶ 18–19, *with* Opp. at 9.) He cannot have it both ways. *See Specht*, 747 F.3d at 933–34 (allegation in complaint binding on plaintiff at summary judgment).

### B. Plaintiff offers no evidence that undermines the reliability of the Company's evidence.

Despite having had access to the code since December—and the ability to retain an expert to analyze it—Plaintiff provides no evidence that undermines the images or screen recordings. Plaintiff does not assert that the relevant portions of the registration screen and the MAW appeared differently when he viewed them, and rightly so. Instead, he attempts to poke holes in Mr. Galavalli's declaration. These attempts fail.

Plaintiff's attempt to cast doubt on the screen recording relies on a misreading of Mr. Galavalli's declaration. Plaintiff first asserts that Mr. Galavalli's declaration contradicts his deposition testimony. (Opp. at 10.) But Mr. Galavalli did not "straightforwardly den[y]" that he created the recording (*id.*); he said "I don't remember." (Galavalli Dep. at 137:7–8.) Moreover, Mr. Galavalli does not claim to have created the screen recording submitted as an exhibit. (Opp. at 10 (citing Galavalli Decl. ¶¶ 22, 35).) [2] While he was able to review and record the process, he states only that the recording (a) is a recording of the staging environment and (b) truly and accurately depicts the functionality of the MAW on May 17, 2023. (Galavalli Decl. ¶¶ 35–38.) *See Hamera*, 790 F. Supp. 3d at 669–70 (relying on recreation created by engineering team).

Plaintiff's failure to present any evidence of his own undermines his reliance on the Massachusetts trial court's decision in *Scanlon*. Unlike Plaintiff here, the plaintiff in *Scanlon* testified that terms were not provided at the relevant time. *Scanlon*, slip op. at 18. And unlike the

---

[2] It is unclear why Plaintiff cites paragraph 22 of Mr. Galavalli's declaration for this proposition. Paragraph 22 refers only to the August 2022 registration screen, not the MAW.

6

Company's evidence here, the defendant's evidence in *Scanlon* "did not address the visual display of those terms." *Id.* Because Plaintiff has provided no evidence that he either did not complete the registration and terms-acceptance processes as depicted, *Scanlon*'s reasoning does not apply. *Cf. id.* at 18 n.11 (noting that requiring a consumer to scroll through terms and conditions and manifest assent can create a binding).

Plaintiff then again raises the specter of the technical limitations the Company has acknowledged throughout this litigation. But Mr. Galavalli explains these limitations at length in his declaration. And as Mr. Galavalli further explains, the registration screen images reflect those technical limitations. (*See* Galavalli Decl. ¶ 27.). So too with the MAW images and recordings, which reflect the MAW as it would have functioned on May 17, 2023, but does not reflect an exact copy of the May 2023 version of the platform. (*See id.* ¶¶ 35–39.)

Finally, the Company's decision to submit Mr. Galavalli's declaration is no mystery. Mr. Galavalli assisted in preparing the Company's written discovery responses, was deposed, and has extensive experience with the Stake.us platform. (Galavalli Decl. ¶¶ 5–9.) He was therefore in the best position to describe the registration screen, the MAW, and the process by which the exhibits were created. *See Hamera*, 790 F. Supp. 3d at 669.

In short, Plaintiff has failed to offer any reason to believe that Mr. Galavalli lacked adequate knowledge to represent, as he did, that the registration page appeared and the MAW functioned as described in his declaration and accompanying exhibits. The Court therefore can and should rely on the Company's evidence, which establishes that Plaintiff agreed to arbitrate this dispute.

### C. The images and screen recordings are not hearsay and would be admissible even if they were.

Plaintiff also contends that the images and screen recordings are inadmissible hearsay. (Opp. at 11–12.) Because the Company has not offered the images and recordings for the truth of

any statement contained within them, they are not hearsay under Rule 801(c). *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 232 (7th Cir. 2021) (statement offered to show party had notice is not hearsay). But even if they were hearsay, they would be admissible as business records under Rule 803(6).

Courts in the Seventh Circuit and elsewhere frequently rely on recreated images in granting motions to compel arbitration. *See e.g.*, *Hamera*, 790 F. Supp. 3d at 669–70; *Zheng v. Live Auctioneers LLC*, 2021 WL 2043562, at *6–7 (S.D.N.Y. May 21, 2021); *Bernardino*, 2017 WL 7309893, at *7; *Selden*, 2016 WL 6476934, at *4–5, *9. Plaintiff's two district court decisions addressing distinct issues in the context of ERISA-related disputes provide no reason for this Court to chart a different path.

In *M&G Health Associates, Inc. v. Health Care Service Corp.*, for example, the defendant relied on exhibits that purported to contain a list of patients who were members of "self-funded or fully-insured plans" during the relevant period to establish that certain patients were members of such plans. 2009 WL 10740611, at *2 (N.D. Ill. Feb. 24, 2009). The exhibits were offered for the truth of the matter asserted—that the patients listed as members of the relevant plans were members of those plans—and therefore inadmissible hearsay unless an exception applied. *See id.* at *2–3. Here, by contrast, the Company has not offered the images and recordings for the truth of, for example, the statements contained within the MAW.

In *Monper v. Boeing Co.*, on the other hand, the defendants' recreated pension information notices were inadmissible because, even if the data in the recreated notices were accurate, the accuracy of that data alone did not mean the recreated notices reflected "an authentic representation of the communication of that data." 2016 WL 1703839, at *4 (W.D. Wash. Apr. 28, 2016). Here, the Company has demonstrated that the images and screen recordings do. As Mr. Galavalli

8

explains, he has personal knowledge of the Company's code archive and generated the images and screen recordings based on data maintained in the regular course of business. *See Bernardino*, 2017 WL 7309893, at *8 n.5 (rejecting similar hearsay argument).

Accordingly, even if the images and recordings were hearsay, they would be admissible under Rule 803(6)'s business records exception. *See Hamera*, 790 F. Supp. 3d at 669–70; *Bernardino*, 2017 WL 7309893, at *8 n.5.

## II. Plaintiff agreed to arbitrate both when he registered and when he accepted a new version of the Terms.

As the Company has shown, all five *Domer* factors demonstrate that the Stake.us registration screen provided adequate notice of the Terms. Plaintiff's argument to the contrary hinges on an unduly narrow definition of the word "acknowledge" and the fact that the hyperlink merely matches the other screen's other hyperlinked elements. (Opp. at 12–15.) Neither argument overcomes the Company's evidence of contract formation.

Plaintiff latches onto an Eighth Circuit decision applying Missouri contract law, *Shockley v. PrimeLending*, 929 F.3d 1012 (8th Cir. 2019), to suggest that Plaintiff did not assent because the Company used the word "acknowledge" on the registration screen (Opp. at 13.). Besides the fact that Missouri law is irrelevant, there are two problems with this argument.

First, by affirming that he read the Terms, Plaintiff was on notice that by "creating a Customer Account" and accessing the Platform's games, he agreed to be bound by the Terms. (Galavalli Decl., Ex. B at 1.) That is enough to establish assent. *Shockley*, 929 F.3d at 1019 (continued employment may constitute acceptance where employer so informs employees); *see also Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151–52 (2006) (employee agreed to arbitrate by continuing employment after receiving notice of dispute resolution program).

Second, Illinois law requires only that that the layout and language of the site "give the user reasonable notice that a click will manifest assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–34 (7th Cir. 2016). Just as a reasonable consumer would understand the phrase "[a]ll sales are subject to Dell's Terms and Conditions of Sale" to mean that she was subject to those terms, *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 983–84 (5th Dist. 2005), a reasonable consumer would understand that the distinct hyperlink to the Terms and the statement attesting that the user had read and acknowledged them meant that he would be bound by the Terms.

That leaves Plaintiff's challenge to the hyperlink's visibility. Just as notice does not "turn on where the hyperlinked text falls on the color wheel," it does not turn on whether the hyperlink was underlined or not. *Domer*, 116 F.4th at 695, 697 (court must evaluate factors in light of webpage as a whole). Because the hyperlink was displayed in bold (like the other hyperlinked elements) and was the same size as the surrounding text, the design of the hyperlink and disclosure weigh in favor of notice even in the absence of a distinct color or underlining. *See id.*; *cf. Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 885 (N.D. Ill. 2020) (criticizing screen where terms link was formatted differently from other links).

Next, recognizing that he cannot dispute that the MAW establishes notice and assent, Plaintiff resorts to rehashing his unpersuasive evidentiary objections. (Opp. at 15–16.) As explained above, each of those objections fail. Because the Company has shown that the MAW presented the Terms in a scroll window and required users to scroll through the Terms before clicking a button labeled "I accept," a reasonable user would be "on notice" of the arbitration agreement in the Stake.us Terms. *Warner v. Real ID, Inc.*, 819 F. Supp. 3d 931, 934–35 (N.D. Ill. 2026).

**III.    The Court may not resolve Plaintiff's enforceability challenges, but to the extent it does, it should reject them.**

Despite agreeing that the arbitrator, not a court, would resolve all enforceability challenges, Plaintiff now asks the Court to determine that the agreement is unconscionable and therefore unenforceable. If the Court considers Plaintiff's challenges, it should reject them because Plaintiff has failed to demonstrate that the arbitration agreement or delegation clause is either procedurally or substantively unconscionable. *Keefe v. Allied Home Mortg. Corp.*, 393 Ill. App. 3d 226, 231 (5th Dist. 2009).

**A.    Neither the arbitration agreement nor the delegation clause are procedurally unconscionable.**

Procedural unconscionability refers to the "circumstances surrounding a transaction including the manner in which the contract was entered into, and whether each party had a reasonable opportunity to understand the terms of the contract." *Matricciani v. Am. Homeowner Pres., Inc.*, 718 F. Supp. 3d 825, 837 (N.D. Ill. 2024). Procedural unconscionability arises when there is "some impropriety during the process of forming the contract depriving a party of a meaningful choice." *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011). Plaintiff has failed to identify any such impropriety here.

Plaintiff characterizes the agreement as an "adhesion contract." (Opp. At 19). But such contracts are a "fact of modern life," and Illinois courts therefore regularly uphold such "take-it-or-leave-it" agreements. *Thakkar v. ProctorU Inc.*, 571 F. Supp. 3d 927, 935 (C.D. Ill. 2021). To make a contract of adhesion unconscionable, the offering party must commit some form of wrongdoing such as "coercion or overreaching" or concealing critical information. *Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264, ¶ 15.

11

Here, Plaintiffs provide no evidence of such wrongdoing here. The Company made the agreement readily available to Plaintiff, who had as much time as he wanted to understand its terms before he agreed to it. *Cf. Zuniga,* 2021 IL App (1st) 201264, ¶ 32 (agreement unconscionable where a baseball ticket bound holder to arbitration provision that was not provided to her). To the contrary, Plaintiff had ample opportunity to review the Terms, reject them, and engage with a different platform if the Terms were unacceptable.

Next, contrary to Plaintiff's assertion, the arbitration agreement is not "confusing" or "opaque." (Opp. at 19). Had Plaintiff clicked the "Terms & Conditions" link before he first created his account, Section 2(f) of the Terms would have notified him of the arbitration agreement and class action waiver in bold, capitalized print. *Davis v. Fenton*, 26 F. Supp. 3d 727, 738 (N.D. Ill. 2014) (no procedural unconscionability where arbitration clause placed in own numbered section, labeled in distinct font style, and in the same font size as rest of agreement). When Plaintiff viewed the updated Terms in the MAW on May 17, 2023, Section 2.7 of the Terms directed him, in bold, capitalized print, to the arbitration provision. As he scrolled down, the Terms again notified him in bold print that he and the Company agreed to resolve all disputes in binding, individual arbitration (Terms § 26.7(a)). Not only is the arbitration agreement "not 'buried,' it is actually highlighted." *Valentine v. Wideopen W. Fin., LLC*, 2012 WL 1021809, at * 3 (N.D. Ill. Mar. 26, 2012).

Lastly, Plaintiff asserts that the arbitration agreement is procedurally unconscionable because it does not disclose that users might be required to pay a non-refundable $225 filing fee. (Opp. At 19).[3] While failing to mention the costs of arbitration may be a "factor to consider," it is not conclusive. *Davis*, 26 F. Supp. 3d at 739. And even if this omission created a small degree of unconscionability, it would not make the agreement unenforceable because Plaintiff has presented

---

[3] The AAA grants fee waivers to consumers who cannot pay the filing fee. Consumer Rules, Forms, and Fees, Am. Arb. Ass'n., https://www.adr.org/rules-forms-and-fees/consumer/.

no evidence that this modest fee makes arbitration "cost-prohibitive," *Powell v. Payday Loan Store of Illinois, Inc.*, 2010 WL 3893894, at \*6 n.5 (N.D. Ill. Sept. 28, 2010).

### B. Neither the arbitration agreement nor the delegation clause are substantively unconscionable.

Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity. *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 27 (2006). Because the arbitration agreement imposes mutual obligations and lacks any unduly harsh or one-sided terms, it is not substantively unconscionable.

Plaintiff's assertion that the arbitration agreement would result in unconscionable delay rests on unfounded speculation and an attempt to apply principles of California law with no Illinois equivalent. Plaintiff asserts that the collective action waiver would delay resolution of claims by "centuries." (Opp. at 17.) But nothing would stop Plaintiff—the only party whose claims are at issue—from demanding arbitration and receiving a prompt decision.

Moreover, this Court recently rejected this very argument in *Parker v. Verizon Commc'ns Inc.*, 2025 WL 1547291 at \*5 (N.D. Ill. May 30, 2025). In *Parker*, the plaintiffs argued that a mass arbitration provision rendered a delegation clause unconscionable because it could delay determinations on arbitrability. *Id.* The Court rejected the plaintiffs' attempt to import into Illinois law the "chilling effect" concept identified in Plaintiff's key authorities, *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at \*5 (N.D. Cal. Sept. 4, 2024) and *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1042 (N.D. Cal. 2022). *See id.*

But even if *Pandolfi* and *MacClelland* accurately reflected Illinois law, they would be irrelevant here. Both cases involved strict bellwether procedures, which set an explicit cap on the

13

number of arbitrations that could proceed party at one time. *See e.g.*, *MacClelland*, 609 F. Supp. 3d at 1040. The collective action provision here imposes no such limit. It instead guards against attempts to evade the requirement to proceed individually. (Terms § 26.7.) Plaintiff has therefore failed to meet his burden to demonstrate that this hypothetical delay makes the delegation clause substantively unconscionable.[4]

Plaintiff's argument that the Company has created "cost-price" disparity also falls short. Because Plaintiff seeks to invalidate the agreement "on the ground that arbitration would be prohibitively expensive," he "has the burden of showing the likelihood of incurring such costs." *Agha v. Uber Techs., Inc.*, 730 F. Supp. 3d 756, 768 (N.D. Ill. 2024). To carry this burden, Plaintiff had to "provide some individualized evidence to show that [he] is likely to face prohibitive costs and that [he] is financially incapable of meeting those costs." *Id.*

Here, Plaintiff provides no evidence at all. He makes no effort to compare that fee to his potential recovery, merely speculating that pursuing individual relief would not be viable. He does not even attempt to demonstrate the fees and costs "relative to the alleged harm and possible recovery." *Valentine*, 2012 WL 1021809, at *5. Plaintiff has likewise provided no evidence that his claims are the kind of "low-dollar-value consumer claims" that raise concerns about cost-price disparity. *See Agha*, 730 F. Supp. 3d at 768. To the contrary, he alleges that in just the six months before filing the complaint he spent over $10,000 on the platform. (Compl. ¶ 74.) Plaintiff has therefore failed to establish unconscionable cost-price disparity.

Plaintiff's challenge to the liability limitation fails because it is not a challenge to the arbitration agreement or delegation provision, but a separate provision of the Terms. A "challenge

---

[4] While this provision is enforceable, the Company has nevertheless agreed to waive its application in arbitration proceedings administered by the AAA. (*See* Declaration of Robert W. Ward, Ex. A.)

14

to another provision of the contract" containing an arbitration agreement does not prevent the Court from enforcing a "specific agreement to arbitrate." *Rent-A-Center W. v. Jackson*, 561 U.S. 63, 70 (2010). This provision is therefore irrelevant to the Court's determination of the arbitration agreement's enforceability. *Collins v. High 5 Ent., LLC*, 2026 WL 1453840, at *4 n.4 (N.D. Ill. May 22, 2026) (rejecting plaintiff's unconscionability argument with respect to provisions not contained within the arbitration agreement) Because the liability limitation is not part of the arbitration agreement but is instead "another provision of the contract," the Court must allow the arbitrator to resolve Plaintiff's challenge to it. *Collins*, 2026 WL 1453840, at *4 n.4; *cf. Hwang v. Pathway LaGrange Prop. Owner, LLC*, 2024 IL App (1st) 240534, ¶ 23 (referring to the "arbitration agreement's" damages cap and prohibition on punitive damages.)

### C. The Court can and should sever any unconscionable provision.

If the Court concludes that a specific provision is unconscionable, the Court should sever it. Severance of an unconscionable provision is proper where the valid provisions are not "so closely connected with unenforceable provisions that [severing them] would be tantamount to rewriting the [a]greement." *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 757 (N.D. Ill. 2015); *see also Kinkel*, 223 Ill. 2d at 46. The case for severance is stronger where the parties have included a severability clause. *Kinkel*, 223 Ill. 2d at 46–47. Finally, in the arbitration context, severance best serves the "strong policy in favor of enforcing arbitration agreements." *Sanchez*, 78 F. Supp. 3d at 757. Accordingly, if the Court determines that the challenged provisions are unconscionable, it should sever them and enforce the remainder of the agreement.

### CONCLUSION

The Company respectfully requests that the Court enter an order compelling Plaintiff to submit his claims to binding, individual arbitration in accordance with the parties' agreement and staying further proceedings in this Court.

Dated: June 5, 2026

Respectfully submitted,

By: */s/A. Jeff Ifrah*
One of Defendant's Attorneys

A. Jeff Ifrah
jeff@ifrahlaw.com
Robert W. Ward
rward@ifrahlaw.com
IFRAH PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
Tel. (202) 524-4140
Fax (202) 524-4141

*Counsel for Defendant*

16